**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| MARIA ELENA HERNANDEZ-MARTINEZ, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | 11 C 4990 | |
| v. | ) | | |
| | ) | Judge George W. Lindberg | |
| CHIPOTLE MEXICAN GRILL, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OPINION AND ORDER**

Before the court is defendant Chipotle Mexican Grill, Inc.'s motion for summary

judgment. For the reasons stated below, the motion is granted in part and denied in part.

**I.** *Defendant's Motion to Strike*

The court begins by considering defendant's motion to strike plaintiff's response to

defendant's statement of material facts, plaintiff's statement of additional facts, and plaintiff's

exhibits. A party opposing a motion for summary judgment must file "a concise response to the

movant's statement [of material facts] that shall contain . . . a response to each numbered

paragraph in the moving party's statement, including, in the case of any disagreement, specific

references to the affidavits, parts of the record, and other supporting materials relied upon." LR

56.1(b)(3)(B). If the nonmovant seeks to offer any additional facts requiring the denial of

summary judgment, he or she must present those facts in the form of "a statement, consisting of

short numbered paragraphs, . . .including references to the affidavits, parts of the record, and

other supporting materials relied upon." LR 56.1(b)(3)(C). The nonmovant is limited to

asserting forty statements of additional fact, absent leave of court to assert more. *See id.* Local

Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of

presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995).

"Employment discrimination cases are extremely fact-intensive," and the court is not "obliged in our adversary system to scour the record looking for factual disputes." *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). The procedure prescribed in Local Rule 56.1 serves the important purpose of promoting efficiency and "ensuring that the adversary system functions as it should." *See Minemyer v. B-Roc Representatives, Inc.*, 695 F. Supp. 2d 797, 801-02 (N.D. Ill. 2009). For example, a nonmovant's presentation of additional facts in a statement of additional facts, as required by Local Rule 56.1, gives the movant the opportunity to admit or deny the facts, and allows the court to readily and fairly determine which of those additional facts are in dispute. Accordingly, the court is "entitled to expect strict compliance" with Local Rule 56.1. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

As defendant argues, plaintiff's filings fail to comply with Local Rule 56.1 in many ways. Although plaintiff filed a statement of additional facts, she also asserted many other additional facts in her brief and in her responses to defendant's statements of fact. For example, although plaintiff admits defendant's statement of fact in paragraph 39, she follows the admission with two pages of additional facts and argument. She also fails to support many of her denials of defendant's statements with citations to the record. The court notes that plaintiff is represented by counsel, and that the court granted plaintiff's counsel two extensions of time to respond to defendant's motion for summary judgment, permitted her to file an amended response to defendant's motion for summary judgment, and granted her leave to file a response brief in

excess of fifteen pages.

The court deems admitted defendant's statements of fact for which plaintiff's denial does not "fairly meet the substance of the material facts asserted" or is not supported by a citation to the record. *See* L.R. 56.1(b)(3); *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528-29 (7th Cir. 2000), *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The court disregards legal arguments presented in plaintiff's responses to defendant's statement of facts. *See Malec*, 191 F.R.D. at 585. The court also disregards additional facts presented in plaintiff's brief or in her responses to defendant's statement of facts, rather than in a Local Rule 56.1(b)(3)(C) statement of additional facts. *See id.* at 584; *see also Ciomber*, 527 F.3d at 643-44. The court disregards statements that are not supported by citations to the record, or that are only supported by citations to the complaint. *See* LR 56.1(b)(3)(C); *Tages v. Univision Television Group, Inc.*, No. 04 C 3738, 2005 WL 2736997, at *3 (N.D. Ill. Oct. 20, 2005) ("It is axiomatic that pleadings are not facts, and that allegations in a complaint do not create a material issue of fact"). The court also disregards hearsay, which is inadmissible in summary judgment proceedings. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

Plaintiff's violations of Local Rule 56.1 are egregious. However, the court declines to strike her filings in their entirety, as defendant urges. To the extent that plaintiff has presented evidence in compliance with Local Rule 56.1, the court will consider it. The motion to strike is granted in part and denied in part.

## II.    *Factual Background*

The following facts are undisputed, unless otherwise noted. Plaintiff was born in Mexico on August 18, 1964. Defendant hired plaintiff as a crew member in one of its Mexican "fast

casual" restaurants in 2000. Crew members are hourly, at-will employees, and are responsible for preparing and cooking ingredients, assembling customer food orders, cleaning and maintaining the restaurant, serving customers, and other similar tasks. In January 2010, plaintiff transferred to defendant's restaurant at 2302 West 95th Street in Chicago, and was supervised by Joseph Brown beginning shortly thereafter.

Plaintiff claims that Brown, who is African-American, favored younger African-American employees, and treated older Hispanic employees poorly. As defendant relates in its statement of material facts, plaintiff testified or stated in her interrogatory responses that Brown:

- described Spanish-language music as "some ugly music";

- told plaintiff that she could not speak Spanish with her co-workers;

- made Hispanic employees unload food trucks and wash dishes alone more often than other employees;

- spoke to non-African American employees "in a harsh tone and manner";

- allowed African American employees to refuse to do certain jobs and to take longer breaks;

- told plaintiff she was slow and lazy;

- yelled at plaintiff to work more quickly because she had been there longer and earned more than other employees;

- told plaintiff that she worked "like a grandma";

- required plaintiff to make tortilla chips, a hot task, even though she had a doctor's note that stated that she should not work in an excessively hot environment; and

- yelled at plaintiff on December 2, 2010 about not making guacamole fast enough, causing plaintiff to scream, feel ill, and have difficulty breathing.

In addition, plaintiff claims in her statement of additional facts that Brown treated her negatively by requiring her to enter cash into the computer, a task that she did not know how to do, causing

her to feel frustrated and to cry.

Plaintiff often called defendant's Human Resources Generalist, Esther Smiley, to complain about various things. At some point before November 2010, plaintiff complained to Smiley that Brown and other managers were treating her differently because she was Hispanic.

Plaintiff took a scheduled vacation beginning December 16, 2010. Plaintiff contends that Brown told her not to come in on a day that she was scheduled to work during the week before her vacation. When plaintiff returned from her vacation in January 2011, Brown had only scheduled her to work on January 12, 2011. According to plaintiff, another supervisor then allowed her to work on January 13 and 14, 2011 as well. Plaintiff claims that although the other supervisor also scheduled her to work on January 15, 2011, Brown sent her home when she arrived at work that day.

The following week, Brown scheduled plaintiff to work four days. Although three Chipotle employees, including Brown, called plaintiff to inform her of the schedule and to ask her if she was coming to work, she did not come to work on those days. On January 25, 2011, after not hearing from plaintiff for ten days, Brown completed a termination form that stated that plaintiff's termination was "Voluntary – Failed to Report to Work."

Defendant terminated Brown on February 1, 2011. Approximately one week after plaintiff left, defendant's assistant manager called plaintiff, told her that Brown was no longer working for defendant, and invited her to return to work. Plaintiff declined the invitation.

Plaintiff filed this action on July 23, 2011, alleging claims of harassment, constructive discharge, discrimination, and retaliation based on race and national origin, in violation of Title VII and 42 U.S.C. § 1981. Plaintiff also alleges claims of harassment, discrimination, and

retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

621, *et seq*. Defendant has moved for summary judgment as to all of plaintiff's claims.

## III.    *Analysis*

Summary judgment shall be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). In considering a motion for summary judgment, the court must draw all

reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods.,*

*Inc.*, 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that

no material issue exists for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

moving party has properly supported its motion, the nonmoving party must offer specific facts

demonstrating that a material dispute exists, and must present more than a scintilla of evidence to

support its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### A.    *Harassment*

The court first examines plaintiff's harassment claims. To survive summary judgment on

these claims, plaintiff must show that her work environment was objectively and subjectively

offensive, and that the harassment was based on her membership in a protected class. *See Ellis*

*v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011). That is, plaintiff must show that the

environment was "one that a reasonable person would find hostile or abusive," and one that she

in fact perceived to be hostile or abusive. *See Smith v. Northeastern Ill. Univ.*, 388 F.3d 559,

566 (7th Cir. 2004). The court examines "all the circumstances, including the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work

6

performance." *Id.* (quoting *Russell v. Bd. of Trustees of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001)).

Plaintiff testified that Brown yelled at her to work more quickly, and told her on several occasions that she worked "like a grandma." In addition, she described an incident in which Brown yelled at her about not making guacamole fast enough, which caused her to feel ill. Plaintiff also claims that Brown required her to work in a hot station making chips, even though her skin breaks out when she is around excessive heat, and she had a doctor's note advising that she should not work in an excessively hot environment. Plaintiff claims that Brown required her to enter information into the computer, which she did not know how to do. According to plaintiff, she lost her desire to live as a result of Brown's abuse.

Plaintiff appears to have regarded Brown's treatment of her to be subjectively offensive. However, there is insufficient evidence as to the frequency and character of the abuse to permit an inference that it was so severe or pervasive as to alter the conditions of her work environment. In addition, as to plaintiff's complaint that Brown required her to work in a hot environment, it is undisputed that making chips was a regular job duty for all crew members. Moreover, it is undisputed that Brown never threatened to physically harm plaintiff.[1]

More importantly, even if Brown was abusive to plaintiff, there is insufficient evidence that his conduct was connected to plaintiff's age, race, or national origin. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004) (observing that in a hostile work environment case based on race, the conduct at issue "must have a racial character or purpose to support a

---

[1] Although plaintiff attempts to admit in part this fact and deny it in part, she offers no responsive citation to the record in support of her denial.

hostile work environment claim").  Indeed, the only actions plaintiff identifies as specifically relating to her age are that Brown told her on several occasions that she worked "like a grandma."  However, it is undisputed that Brown called employees as young as 19 and 24 "grandma," and it appears that Brown used the term in reference to employees he felt were working too slowly, rather than to refer to their age.

Nor is there sufficient evidence to support plaintiff's claim that Brown created an objectively hostile work environment based on her race or national origin.  The only evidence in the record that may touch on race or national origin is that Brown once characterized Spanish-language music as "ugly," he told plaintiff that she could not speak Spanish with her co-workers (although plaintiff does not dispute that Brown told her that he was concerned that she was talking about her co-workers in Spanish), and he required Hispanic employees to unload food trucks and wash dishes alone more often than non-Hispanic employees.  The court finds that this evidence is not enough to allow a reasonable jury to conclude that plaintiff was subjected to an objectively hostile work environment based on her race or national origin.  *See Luckie*, 389 F.3d at 714 (in order to support a hostile work environment claim, the evidence must "show a workplace permeated with discriminatory ridicule, intimidation, and insult"); *see also Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (observing that supervisor's reference to African American music as "wicka wicka woo music" was not directed at the plaintiff and therefore had a reduced impact).  Defendant's motion for summary judgment as to plaintiff's harassment claims is granted.

**B.**     ***Constructive Discharge***

The court next turns to plaintiff's constructive discharge claim.  The Seventh Circuit has

"set a high bar for constructive discharge claims." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007). An employee may show constructive discharge by establishing that she was forced to resign because her "working conditions, from the standpoint of the reasonable employee, had become unbearable." *Fischer v. Avanade, Inc*., 519 F.3d 393, 408-09 (7th Cir. 2008). Generally, to support a claim for constructive discharge based on discriminatory harassment, "a plaintiff's working conditions must be even more egregious than the high standard for hostile work environment claims, because, in the ordinary case, an employee is expected to remain employed while seeking redress." *Boumehdi*, 489 F.3d at 789. Since plaintiff has not met her burden of showing that she was subjected to a hostile work environment, she also fails to establish that she was constructively discharged based on harassment. *See Bannon v. Univ. of Chicago*, 503 F.3d 623, 629-30 (7th Cir. 2007).

C.     *Discrimination*

Next, the court considers defendant's motion for summary judgment as to plaintiff's age, race, and national origin discrimination claims. Defendant argues that all of these claims fail because plaintiff did not suffer an adverse employment action. In order to establish discrimination under Title VII, 42 U.S.C. § 1981, or the ADEA, plaintiff must show that she suffered a materially adverse employment action. *See Lucero v. Nettle Creek Sch. Corp*., 566 F.3d 720, 730 (7th Cir. 2009) (Title VII and § 1981); *Barton v. Zimmer, Inc*., 662 F.3d 448, 453-54 (7th Cir. 2011) (ADEA). "An adverse employment action is one that significantly alters the terms and conditions of the employee's job," and is "not merely an inconvenience or a change in job responsibilities." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).

Although plaintiff has not established that she was constructively discharged, evidence

that defendant reduced plaintiff's hours may create an issue of fact for trial as to whether plaintiff suffered an adverse employment action. A reduction in work hours may constitute an adverse employment action, where the employee loses wages as a result. *See Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 919 (N.D. Ill. 2011); *see also O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) (explaining that actionable employment actions include cases in which an employee's compensation, benefits, or other financial terms of employment are diminished).

Defendant contends that plaintiff worked her full schedule in December 2010. In response to this contention, plaintiff offers evidence that Brown reduced her hours during the week before she went on vacation on December 16, 2010. Plaintiff testified that Brown "took a day for the final week before [she] went on vacation," telling her sarcastically, "I don't need you anymore. Go ahead and enjoy your vacation."[2] Although defendant argues that plaintiff's pay statements show that her hours were consistent throughout 2010, defendant fails to provide plaintiff's pay stubs for the period from December 6, 2010 to January 2, 2011.

It is undisputed that Brown only scheduled plaintiff to work on January 12, 2011 during the week after she returned from her vacation. Although Brown did not schedule plaintiff to

---

[2] Although plaintiff contends that Brown told her not to work as scheduled for a total of three days in December 2010, she only cites to unsigned and unsworn letters to defendant and the EEOC, which state that they were prepared by plaintiff's children and her attorney. These documents are unauthenticated and do not qualify as a "declaration" under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(c)(4); *Cunningham v. Windriver Management Group, LLC*, No. 3:10-cv-00358, 2011 WL 4449657, at *5 (M.D. Tenn. Sept. 26, 2011) (construing 2010 amendment to Fed. R. Civ. P. 56 to require declaration submitted in summary judgment proceedings to comply with 28 U.S.C. § 1746's requirement that the declarant state that the declaration is true under penalty of perjury), *cited in Jajeh v. County of Cook*, 678 F.3d 560 n.4 (7th Cir. 2012).

work on January 13 or 14, 2011, another Chipotle supervisor ultimately permitted her to work those days. Plaintiff came to work on January 15, 2011 as well, because she contends that the other supervisor scheduled her to work that day, but Brown sent her home. The court finds that a material issue of fact exists as to whether Brown reduced plaintiff's hours in December 2010 and January 2011. The court concludes that plaintiff has sufficiently shown an adverse employment action.

The court next examines whether plaintiff has otherwise established her discrimination claims. Plaintiff may establish discrimination under Title VII, § 1981, and the ADEA through either the direct method or indirect method of proof. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). Plaintiff argues that she can establish her discrimination claims under both methods.

Under the direct method of proof, plaintiff must offer direct or circumstantial evidence that defendant took an adverse job action, and that the action "was motivated by an impermissible purpose." *See Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Nichols v. S. Ill. Univ. – Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007). Alternatively, a plaintiff may produce a "convincing mosaic" of circumstantial evidence that points directly to a discriminatory reason for the decision at issue. *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Such circumstantial evidence may include "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group . . . and evidence, whether or not rigorously statistical, that similarly situated employees outside

11

the protected class received systematically better treatment." *See Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (quoting *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009)).

Drawing all reasonable inferences in plaintiff's favor, as it must in these proceedings, the court finds that there is sufficient circumstantial evidence for plaintiff's race and national origin discrimination claims to survive summary judgment. For example, there is evidence in the record that Brown made Hispanic employees unload food trucks and wash dishes alone more often than other employees, that he allowed African American employees to refuse to do certain jobs and to take longer breaks, and that he spoke harshly to non-African American employees. The court concludes that plaintiff's race and national origin discrimination claims survive summary judgment under the direct method.

Plaintiff's age discrimination claim does not survive summary judgment under the direct method, however. As discussed above, Brown used the term "grandma" to refer to employees of all ages whom he believed were working too slowly, and there is no evidence that he used this term to single out older employees based on their age. Nor does Brown's criticism that plaintiff should work faster because of her comparatively lengthy tenure with Chipotle necessarily relate to her age, especially given the ordinarily high turnover of employees in fast food restaurants. Finally, the court disregards plaintiff's assertion in her brief that Brown hired substantially younger African Americans shortly after she stopped working for defendant, because she neither provides any supporting citation for this assertion nor asserts this fact in her statement of additional facts.

Plaintiff's age discrimination claim also fails to survive summary judgment under the

12

indirect method.  Under the indirect method, plaintiff first must establish a *prima facie* case of discrimination by showing that: (1) she is a member of a protected class; (2) her job performance met defendant's legitimate expectations; (3) she suffered a materially adverse employment action; and (4) defendant treated similarly situated employees who were not in the protected class more favorably.  *See Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009).  To satisfy her burden of showing that another employee is similarly situated, plaintiff must show, at a minimum, "that the comparators (1) 'dealt with the same supervisor,' (2) 'were subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *See Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)).  Plaintiff identifies no younger, similarly situated employees whom she claims defendant treated more favorably,[3] and does not support her contention that Brown replaced her with someone substantially younger.  Therefore, her age discrimination claim also fails to survive summary judgment under the indirect method.

### D.    *Retaliation*

Finally, the court examines plaintiff's retaliation claims.  Title VII, section 1981, and the ADEA prohibit employers from punishing employees for opposing a discriminatory practice.  *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (Title VII); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (section 1981); 29 U.S.C. § 623(d).  As with her

---

[3]  Although plaintiff states in her brief that defendant treated Rosalind Brown, Jerrell Griffin, Victor Roman, and Latoya Young more favorably, she offers no evidence as to the ages of these individuals.  Nor does she offer evidence in compliance with Local Rule 56.1 as to how these individuals were treated more favorably.

discrimination claims, plaintiff may establish her retaliation claim through either the direct or indirect method. *See Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012).

Under the direct method, plaintiff must show that she engaged in a statutorily protected activity, that she suffered an adverse action, and that there was a causal link between the two. *See Coleman*, 667 F.3d at 859. For the reasons discussed above relating to plaintiff's discrimination claims, the court concludes that plaintiff has shown an adverse action.

In order to satisfy the requirement that she engaged in a statutorily protected activity, plaintiff must show that she complained of discrimination based on being a member of a protected class. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). A general complaint of discrimination or harassment, "without indicating a connection to a protected class," is insufficient. *Id*.

Although plaintiff contends that she made a number of complaints to Human Resources Generalist Esther Smiley, there is no evidence that plaintiff referenced discrimination or harassment based on membership in a protected class in most of these complaints. However, it is undisputed that on one occasion plaintiff complained to Smiley that Brown and other managers were treating her differently because she was Hispanic. The court finds that this evidence sufficiently shows a statutorily protected activity supporting a retaliation claim under Title VII and section 1981. There is no evidence in the record that plaintiff complained of age discrimination, however, and therefore the motion for summary judgment is granted as to her ADEA retaliation claim.

Defendant argues that even if plaintiff complained of discrimination and suffered an adverse action, she fails to show a causal link between the two because she has not shown that

14

Brown was aware of her complaint. The "key inquiry" on this issue is whether the decision-maker had actual knowledge of the allegations of discrimination at the time he or she made the decision. *Luckie*, 389 F.3d at 715. "At minimum, therefore, [plaintiff] must offer evidence that would support a reasonable inference that [the decision-maker] was aware of [plaintiff's] allegations of discrimination." *Id*. Smiley testified that after plaintiff complained to her about the discrimination, Smiley spoke to the managers. The court finds that this is sufficient to support an inference that Brown was aware of plaintiff's complaint. Defendant's motion for summary judgment is denied as to plaintiff's Title VII and section 1981 retaliation claims.

**ORDERED:** Defendant's motion to strike plaintiff's exhibits, deem facts admitted and strike plaintiff's response to defendant's statement of material facts, and additional statement of material facts [50] is granted in part and denied in part. Defendant's motion for summary judgment [31] is granted in part and denied in part. The parties' proposed final pretrial order is to be submitted to chambers (and not filed) by 2:00 p.m. on July 27, 2012. The parties are reminded that their pretrial order must comply in every respect with Form LR 16.1.1 and 16.1.3, and the court's Case Management Procedures relating to the proposed final pretrial order.

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED:   July 9, 2012

15